# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

September 26, 2019

Lyle W. Cayce
Clerk

No. 19-30056
Summary Calendar

EAGLE WATER, L.L.C.

Plaintiff - Appellant

v.

GENE ASH; NIDA ASH; ARCH INSURANCE COMPANY,

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:17-CV-00250

Before KING, GRAVES, and WILLETT, Circuit Judges.

PER CURIAM:*

The owner of a sewer system spent $608,952.19 repairing the system following a localized collapse. The sewer owner attempted to recover those repair costs from the company that issued its liability insurance policy. The district court granted the insurance company's motion for summary judgment and dismissed the sewer owner's claims. For the reasons explained below, we AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-30056

## I.

Eagle Water, L.L.C. ("Eagle Water") is the owner of a sewer system that services the Kingston Plantation neighborhood in Bossier City, Louisiana. At all relevant times, Eagle Water held a liability insurance policy issued by Arch Insurance Company ("Arch"). That policy covered "those sums that the Insured becomes legally obligated to pay as damages because of . . . 'property damage,'" but the policy's owned-property exclusion[1] stated that damage to "[p]roperty owned by the Insured" was not covered.

On January 5, 2016, Eagle Water's sewer system suffered a localized collapse which produced a sewage backup in one Kingston Plantation home. Arch paid a $4,340.86 claim under Eagle Water's liability insurance policy for the property damages caused by that backup, and Eagle Water paid a construction company $608,952.19 to repair the sewer system. Repairing the sewer system took approximately eight months and required excavation of streets, sidewalks, driveways, and yards. Without those repairs, there may have been additional backups or a raw-sewage spill.

Eagle Water submitted a claim to Arch seeking reimbursement for the cost of repairing the sewer system. Arch rejected the claim, and Eagle Water sued. After discovery, Arch moved the district court for summary judgment. The district court granted that motion and dismissed all of Eagle Water's claims. The district court reasoned that Eagle Water's repair costs were not covered by the liability insurance policy issued by Arch, because those costs were not "damages" that Eagle Water became legally obligated to pay.

---

[1]"The purpose of owned property exclusions in general liability policies is to effectuate the intent that liability insurance is designed to provide compensation for damages to property not owned or controlled by the insured. It does not provide first party coverage for losses sustained by the insured on its own property." *Norfolk S. Corp. v. Cal. Union Ins. Co.*, 2002-0369, p. 7 (La. App. 1 Cir. 9/12/03), 859 So. 2d 167, 193.

No. 19-30056

## II.

We review the district court's grant of summary judgment de novo and apply the same standard as the district court. *Springboards to Educ., Inc. v. Hous. Indep. Sch. Dist.*, 912 F.3d 805, 811 (5th Cir. 2019). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review the facts in the light most favorable to the party opposing summary judgment. *In re Dall. Roadster, Ltd.*, 846 F.3d 112, 123 (5th Cir. 2017).

## III.

Louisiana law states that "insurance policies are contracts and 'should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.'" *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 512 (5th Cir. 2014) (quoting *Cadwallader v. Allstate Ins. Co.,* 2002-1637, p. 3 (La. 6/27/03); 848 So.2d 577, 580). While the "words of a contract must be given their generally prevailing meaning," it is also true that "[w]ords of art and technical terms must be given their technical meaning when the contract involves a technical matter." La. Civ. Code Ann. art. 2047. If "the words of a contract are clear and explicit and lead to no absurd consequences," Louisiana law states that "no further interpretation may be made in search of the parties' intent." *Id.* art. 2046.

The district court correctly determined that Eagle Water's sewer repair costs are not covered by its liability insurance policy. The policy covers "sums" that Eagle Water "becomes legally obligated to pay as damages." Damages are "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury." *Damages*, Black's Law Dictionary (11th ed. 2019). *See also Damages*, Ballentine's Law Dictionary (3d ed. 2010) ("The sum of money which the law awards or imposes as pecuniary compensation, recompense, or satisfaction for

an injury done or a wrong sustained as a consequence either of a breach of a contractual obligation or a tortious act."). When Eagle Water paid to repair its sewer system, it was not compensating anyone for loss or injury, so the repair costs are not damages, which means that they are not covered by Eagle Water's liability insurance policy.

Eagle Water argues that the district court erred by misapplying our decision in *Pioneer Exploration*. In that decision, we stated that, "in Louisiana, the rule seems to be that costs incurred for the prevention of future harm to third-parties do not fall within the 'owned' property exclusion, as long as some third-party harm has already been demonstrated." *Pioneer Expl.*, 767 F.3d at 517. According to Eagle Water, *Pioneer Exploration* indicates that Eagle Water's repair costs are covered by its liability insurance because a sewage backup occurred and because the costs were incurred to prevent additional backups and potential sewage spills.

Eagle Water is incorrect. *Pioneer Exploration* was a case about a gas well that "suffered a blowout in January 2008." 767 F.3d at 507. It took approximately 50 days to plug the well, during which time "salt water and other fluids flowed from the wellhead" onto neighboring property. *Id.* We concluded, applying Louisiana law, that an owned-property exclusion in a liability policy did not prevent coverage of remittance costs in that situation, because those costs "had been incurred to prevent imminent or immediate harm to third-parties" and because actual damage had occurred. *Id.* at 517.

But concluding that an owned-property exclusion does not prevent coverage is not the same as concluding that coverage exists. Even if an owned-property exclusion does not prevent coverage, a different exclusion might. We reached that exact conclusion in *Pioneer Exploration. See id.* at 518 (concluding that coverage was excluded by "the Property Damage exclusion and Blended Pollution endorsement" even though it was not excluded by the owned-property

No. 19-30056

exclusion). Likewise, no matter whether the owned-property exclusion in Eagle Water's liability insurance policy applies, its repair costs are not covered by the policy, because those costs are not damages.

## IV.

For the foregoing reasons, the district court's judgment granting summary judgment and dismissing Eagle Water's claims is AFFIRMED.